IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILE [handwritten/stamp]

05 APR 22  PM 4: 07

ROBERT R. DI    CHO
CLERK, U.S. DI     ST.
W.D. OF TN, MEMPHIS

LISA YARBROUGH,

    Plaintiff,

v.                                                    No. 03-2630 B/P

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION TO DENY RELIEF AND TO AFFIRM
UNUM'S DECISION TO DENY BENEFITS AND DENYING PLAINTIFF'S MOTION TO
REVERSE DEFENDANT'S DENIAL OF DEATH BENEFITS

---

This case involves a claim under the Employees Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), by Plaintiff, Lisa Yarbrough, for death benefits provided by an employee benefit plan. Plaintiff is the widow of Robert N. Yarbrough, Jr. ("decedent" or "deceased") who was employed by Ingram Micro, Inc. ("Ingram"). The deceased enrolled through his employer in a life insurance benefit plan which was administered by the Defendant, Unum Life Insurance Company of America ("Defendant" or "Unum"). After Mr. Yarbrough died, Plaintiff filed a claim with the Defendant which paid only part of the policy benefits based on the deceased's failure to accurately list all of his medical conditions. Yarbrough appealed the decision without success. In the instant action, she seeks review of the plan administrator's decision to withhold a portion of the benefits. The Plaintiff and Defendant have filed motions to reverse and affirm, respectively, the decision of Unum to deny relief. As responses have been filed, the motions are now ready for disposition.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 4-25-05

41

FACTS

The following facts are taken from the administrative record filed on January 28, 2003. See Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991) (holding that when a court reviews a denial of ERISA benefits, it may generally consider only the evidence available to the administrator at the time of the final decision). As an employee of Ingram, the deceased was covered under group policy number 530226 001 issued by Unum which named Plaintiff as the beneficiary. (Administrative Record at UACL00062-UACL00107; hereinafter "R. at 62-107".) On January 3, 2002, decedent applied for additional coverage and filled out an evidence of insurability form (hereinafter "E of I form"). (R. at 130, 259.)   At the end of February, Defendant approved the deceased's E of I form requesting additional life insurance.

On May 8, 2002, the decedent was seriously injured in a motorcycle accident occurring on the premises of his employer. (R. at 257.) Less than a month later, Plaintiff's husband died as a result of head injuries suffered from the incident. (R. at 257.) Thereafter, Plaintiff submitted her claim to Unum for life insurance, supplemental life insurance, accidental death and dismemberment, and supplemental accidental death and dismemberment benefits. (R. at 192.) On July 25, 2002, an agent of the Defendant informed Yarbrough by letter that her claim for life insurance benefits in the amount of her husband's annual earnings and for supplemental life insurance benefits in the amount of twice her husband's annual earnings were approved while the remaining coverage was still being reviewed. (R. at 126.) Several weeks later, Plaintiff was further advised that because the E of I form for the additional coverage was completed less than two years before she made her claim, Unum had the right under the policy to verify the accuracy of the medical information provided at the time of the application. (R. at 129.) In that same letter, Defendant requested that Yarbrough complete a

2

medical authorization form regarding the deceased's medical records, which she filled out and returned to Unum. (R. at 129, 171.) After the medical records were received, Unum's agent sent Plaintiff's claim to its clinical consultant, who forwarded the claim to Unum's Medical Underwriting Department for "contestable review." (R. at 260-61.) On November 8, 2002, the department sent the clinical consultant an internal memorandum advising that "[t]he clinical notes disclosed several problematic issues - 7 notations regarding his weight that ranged from 290 lbs. to 300 lbs. [even though the deceased indicated he weighed 260 on the E of I]; 10/23/01 note stating that a GGT result was 221 [(indicating elevated liver enzymes); and that h]e also had several elevated blood pressure readings." (R. at 265.) As a result, the Defendant explained to the deceased's employer that it would not be paying the supplemental life insurance benefits because the information it received "was not completely accurate" and it would not have approved the application had the correct information been disclosed by the deceased. (R. at 266.) Unum further indicated that its decision was not related to the decedent's motorcycle accident. (R. at 268.)

On November 22, 2002, Defendant sent Plaintiff a letter denying her claim for the supplemental life insurance benefits because the application for insurance contained incomplete and inaccurate information. (R. at 270.) Unum explained that question one on the application asked whether the applicant had "been diagnosed or received treatment" in the past seven years from a medical professional for "any heart disorder, high blood pressure, stroke, cancer, tumor, diabetes, alcoholism, kidney or liver disease, . . . respiratory, mental, nervous condition or emotion disorder, arthritis, . . . or any bone, joint or muscle disorder?" (R. at 271.) The deceased checked "no" in response to the question. (R. at 271.) Additionally, question five asked whether "[d]uring the past five years, other than for conditions listed above, have you consulted or been treated by a member

3

of the medical profession or been hospitalized?" (R. at 271.) Again, the deceased answered in the

negative. (R. at 271.) Finally, in response to question four which asked the applicant "[d]o you take

prescription drugs or medications for any physical, mental, nervous condition or emotional disorder,"

the deceased indicated a past medical history of arthritis in his right ankle for which he took Voltran

on a daily basis. (R. at 130, 271.) Based on the discrepancies between the deceased's medical

records and the answers provided in the E of I form, Unum declared that it would not have approved

the deceased's application had he provided complete and accurate information. (R. at 271.)

Defendant informed Yarbrough that she could appeal the decision and that her appeal "should

include her view of the issues, as well as any documentation [she wished] Unum . . . to consider."

(R. at 270-71.)

On December 2, 2002, Plaintiff appealed Defendant's decision. (R. at 276.) Unum sent

Yarbrough a letter on January 25, 2003, denying her appeal, stating as additional reasons that

> [t]he medical records received from Dr. Craig noted Mr. Yarbrough was seen on May
> 18, 2000 for atypical Pneumonia and Gastroesophageal Reflux Disease (GERD) and
> was prescribed Prevacid. Dr. Craig further noted, "I explained to the patient that
> losing weight will help his reflux." The May 18, 2000 record also noted a diagnosis
> of obesity and he was prescribed Meridia 10 mg to see if this would help him lose
> weight and he recommended the sugar busters diet. The January 23, 2001 record
> indicated that Mr. Yarbrough requested a refill of his Prevacid for his heartburn. The
> September 20, 2001 record noted Mr. Yarbrough was seen at the clinic complaining
> of shortness of breath and a cough. Dr. Craig noted, "He does have a history of
> asthma. He has been out of his [Azmacort] and Vanillin for about a month."
> Included with his medical records, was a chart specifying Mr. Yarbrough's weight,
> pulse, blood pressure, and temperature for each visit dated October 19, 1999 through
> March 14, 2002.

(R. at 182, 284.) Unum claimed the deceased failed to accurately complete the E of I form by not

listing the conditions contained in the medical records as well as the prescriptions and treatments

prescribed for those conditions. (R. at 283.) Thereafter, Plaintiff filed this action seeking to overturn

the Defendant's denial.

## ANALYSIS

The parties disagree on what the appropriate standard of review should be, about several terms used in the policy and E of I form, whether Unum could rely on additional reasons in denying Plaintiff's claim on appeal, whether Unum considered "new" information submitted by Yarbrough in her appeal letter, and whether the Defendant appropriately denied her claim for benefits. The Court will consider these issues in turn.

### 1. Standard of Review.

A denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a de novo standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Williams v. Int'l Paper Co., 227 F.3d 706, 710-11 (6th Cir. 2000) (citations omitted). Where an ERISA plan expressly affords discretion to a plan trustee to make benefit determinations, a court reviewing the plan administrator's actions applies an arbitrary and capricious standard of review. Id. As the Plaintiff has conceded, the Court must review Unum's denial of benefits under the arbitrary and capricious standard because the policy in this action grants Unum that discretionary authority. (R. at 95; Mem. Supp. Pl.'s Mot. Reverse Def.'s Denial Death Benefits at 8 ("Pl.'s Mem.").) Under this standard, the Plaintiff bears the burden of proof to establish that Defendant's determination was arbitrary and capricious. Dowden v. Blue Cross & Blue Shield of Texas, 126 F.3d 641, 644 (5th Cir. 1997); Bowen v. Central States, Southeast and Southwest Areas Health and Welfare Fund, No. 91-3981, 1992 WL 92832, at *3 (6th Cir. May 6, 1992) (holding that the decision must be sustained unless plaintiff can prove that the actions were arbitrary or capricious); Brandon v. Metro. Life Ins. Co., 678 F. Supp. 650, 655

(E.D. Mich. 1988) (deciding that plaintiff failed to establish that the actions were arbitrary or capricious).

The arbitrary or capricious standard is a "highly deferential standard of review." Yeager v. Reliance Std. Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). It is the least demanding form of judicial review of administrative action. Williams, 227 F.3d at 712. When reviewing a decision under this standard, a court must decide whether the plan administrator's determination was rational in light of the plan's provisions. Id. Stated differently, when it is possible to offer a reasoned explanation based on the evidence for a particular outcome, that outcome is not arbitrary or capricious. Id.; see also Raskin v. UNUM Provident Corp., No. 03-2270, 2005 WL 271939, at *2 (6th Cir. Feb. 3, 2005). The fact that a contrary conclusion could have been reached does not afford a basis to override the committee's decision. Whitehead v. Federal Express Corp., 878 F. Supp. 1066, 1070 (W.D. Tenn. 1994).

However, Plaintiff argues that the standard of review should be altered by Unum's conflict of interest since it was both the plan administrator deciding eligibility and the insurance company ultimately responsible for paying the claim. (Pl.'s Mem. at 9.) Under the terms of the policy, Ingram, the deceased's employer, was the plan administrator and the named fiduciary which could delegate its duties to the Defendant as the plan insurer and underwriter. After Ingram exercised its power to transfer its duties to Unum, the Defendant also became the plan administrator. (R. at 74, 106; Pl.'s Mem. at 9.)

Conflicts of interest generally arise when an insurance company which administers an ERISA plan pays benefit claims out of its own assets. See Miller, 925 F.2d at 984-85 (finding a conflict of interest in an insured's ERISA benefit plan); Brown v. Blue Cross & Blue Shield of Ala., 898 F.2d

1556, 1559-68 (11th Cir. 1991) (discussing conflicts of interest in the ERISA context for insured and uninsured plans). Consequently, the insurance company's "fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial." Miller, 925 F.2d at 984. A conflict of interest can also arise if the plan administrator is controlled by the entity funding the plan. University Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000). If the benefit plan administrator has a conflict of interest in deciding claims, then the court must take that conflict into account when reviewing the administrator's decisions. Miller, 925 F.2d at 984 (considering the conflict of interest inherent in the defendant's benefit plan).

The Defendant does not argue that a potential conflict of interest does not exist but instead asserts that the Plaintiff has not presented any evidence showing that a conflict actually influenced its decision to deny Yarbrough's benefits, as required by the case law. In Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir. 1998), the Sixth Circuit stated that where a "review of the record reveals no significant evidence that [the defendant] based its determination on the costs associated with [the claimant's] treatment or otherwise acted in bad faith, we cannot conclude that [the defendant] was motivated by self-interest." "Mere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." Gough v. Metro. Life Ins. Co., No. 3:03-0158, 2003 WL 23411993, at *9 (M.D. Tenn. Nov. 21, 2003) (citing Peruzzi, 137 F.3d at 433). In this case, Yarbrough has merely made allegations regarding the Defendant's potential conflict of interest but has failed to establish that any conflict affected Unum's determination regarding the deceased. Thus, the Court is unable to conclude that the Defendant's decision to deny Plaintiff's claim for the supplemental life insurance was actually motivated by self-interest. See Peruzzi, 137 F.3d at 433.

Even considering Unum's potential conflict of interest as a factor in the arbitrary and capricious standard, the Court finds that it is not decisive in the outcome of this case.

II.  The Terms of the Policy and the E of I.

The parties disagree over the interpretation of several provisions of the policy including when Unum's two year period to review the medical information submitted by the deceased began to run, what the parties are required to show to be entitled to relief under the terms of the policy, and whether the answers to the E of I form must be accurate in fact or to the best of the decedent's knowledge.

A.  The Two-Year Provision.

Plaintiff argues Unum's statement in its denial letter indicating that "any increase in coverage is subject to a new 2-year period beginning with the date of the increase" during which the Defendant could review the accuracy of the information provided in the E of I form was incorrect and not found anywhere in the policy.  (Pl.'s Mem. at 15.)  Accordingly, Plaintiff maintains that because the decedent's initial life insurance policy became effective on January 1, 1999, Unum could not review the medical information submitted in February 2002.  However, Plaintiff concedes that under the policy, Unum could take action within the first two years that coverage was in force.  (R. at 88; Pl.'s Mem. at 15 n.9.)

Defendant asserts that the two-year review period for reviewing the information provided by the deceased in the E of I form did not go into effect until the insurer approved the E of I form on February 27, 2002.  (R. at 93-94; Def.'s Mem. Opp'n Pl.'s Mot. Reverse Def.'s Denial Death Benefits Supp. Its Mot. Deny Relief Affirm Unum's Decision Deny Benefits at 20 ("Def.'s Mem.").)  Unum points to a provision in the policy which states that "[c]overage will begin at 12:01 a.m. on

the date Unum approves your evidence of insurability form." (R. at 93; Def.'s Mem. at 20.)  Thus, Defendant asserts that it made its determination to deny benefits on November 22, 2002, which was within two-years from the date that the deceased's application for the additional coverage was approved.

As stated above, because Unum had the discretionary authority to interpret the provisions of the policy, its interpretation must be viewed under an arbitrary and capricious standard.  See Williams, 227 F.3d at 712.  When reviewing a decision under this standard, a court must decide whether the plan administrator's determination was rational in light of the plan's provisions.  Id.  The Court finds that Unum's interpretation met that standard.  The policy provided that the insurer could review the accuracy of information provided in the E of I form during the initial two years of effective coverage which began on the date Unum approved the E of I form.  (See R. at 88, 111-12.) Therefore, it was reasonable for Unum to conclude that coverage on the additional supplemental life insurance did not begin until February 27, 2002.  Defendant's request for additional medical information was well within the two-year period from the date the E of I form was completed.

*B. What the Parties are Required to Prove.*

Plaintiff argues that the Defendant could only deny benefits if the deceased made the statements in question in a fraudulent manner.  Conversely, Defendant submits that pursuant to the policy, it can deny Yarbrough's claim if information provided in the E of I form was inaccurate regardless of whether the deceased had any intent to defraud when completing the application. Plaintiff also submits that the Defendant cannot deny coverage as long as the applicant answered the questions on the E of I form to the best of his knowledge and belief even if the answer turned out to be incorrect in fact.  On the contrary, Defendant submits that the policy provided it with the authority

9

to deny coverage for answers which were not correct. The Court will address these issues in turn.

*1. Whether the Decedent Must Have Had an Intent to Defraud.*

Plaintiff maintains that since ERISA does not address the effect of a misrepresentation or omission in an insurance application, the Court must look to federal common law and state law for guidance. See Davies v. Centennial Life Ins. Co., 128 F.3d 934, 944 (6th Cir. 1997) (holding that "state law may guide us in determining the proper federal common law standards" to apply in deciding ERISA claims.) (citing Dingledine v. Cent. Reserve Life Ins. Co., 934 F. Supp. 892, 898 (S.D. Ohio 1996)); Tingle v. Pacific Mutual Ins. Co., 837 F. Supp. 191 (W.D. La. 1993). Plaintiff points to Massachusetts Casualty Ins. Co. v. Reynolds, 113 F.3d 1450, 1455-56 (6th Cir. 1997), in which the Sixth Circuit determined that, under Tennessee law, an insurance company can avoid a policy based on the fraudulent misstatement defense when:

1. [The insured m]ade a statement,
2. Such statement was false,
3. Such statement was material,
4. That the plaintiff knew the representation was false at the time it was made, or that it was made recklessly without any knowledge of its truth, and
5. The false representation was made with the intention of deceiving the defendant.

Id. (citations and internal quotations omitted).

Relying on the policy language alone, Unum argues that it could "reduce or deny any claim" if "any of the statements [decedent made were] not complete and/or not true at the time they [were] made." (R. at 88; Def.'s Mem. at 17.) Therefore, as it denied coverage based on the language contained in the policy, Defendant submits that Plaintiff's reliance on the doctrine of fraudulent misstatement is misplaced. (Def.'s Mem. at 17); see Lake v. Metro. Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996) (stating that "courts must give effect to the unambiguous terms of an ERISA

plan") (citation omitted).

The Court concludes that Tennessee's fraudulent misstatement defense is inapplicable to this case under the terms of the policy. As previously noted, a plaintiff must prove that the insurer's denial was arbitrary and capricious. See Dowden, 126 F.3d at 644. The policy clearly provided Unum with the authority to deny coverage if answers provided were not true or complete. (See R. at 88.) It does not require that the answers be made with an intent to deceive or defraud. Additionally, Reynolds is distinguishable because in that case the policy specifically referred to "fraudulent misstatements" made by the insured as the basis for voiding the policy or denying a claim. See Reynolds, 113 F.3d at 1454. Here, the insurance policy language did not require that the misstatements be fraudulently made. Accordingly, the Court must uphold the unambiguous terms of the policy. See Lake, 73 F.3d at 1379.

   *2. Whether the Deceased's Answers Need to Have Been Only to the Best of His Knowledge.*

The next issue is whether Unum could refuse a claim based on answers in the E of I form that were incorrect in fact even if they were made to the best of the applicant's knowledge and belief. Yarbrough maintains that the E of I form only required the deceased to acknowledge that "[t]he statements I have made on this application are true to the best of my knowledge and belief." (R. at 130; Pl.'s Reply Def.'s Resp. Pl.'s Mot. Reverse Def.'s Denial Death Benefits at 3 ("Pl.'s Reply").) In support of her argument, Plaintiff cites to Hauser v. Life General Security Insurance Company, 56 F.3d 1330, 1334-35 (11th Cir. 1995), in which the Eleventh Circuit Court of Appeals concluded that "[w]here the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his

11

actual knowledge or belief." Id. (citing <u>William Penn Life Ins. Co. of New York v. Sands</u>, 912 F.2d 1359, 1363 (11th Cir. 1990) (citing <u>Skinner v. Aetna Life & Casualty</u>, 804 F.2d 148, 150 (D.C. Cir. 1986))).  The court opined that "[w]here an insurer only requests the disclosure of information to the best of the insured's 'knowledge and belief,' and where the applicant so complies, we will decline to protect the insurer 'from a risk it assumed by virtue of the contractual language it drafted.'" Id. (citing <u>Sands</u>, 912 F.2d at 1364).

The Court is persuaded that the Defendant here must abide by the terms of the application and suffer the risk it created by including similar language in the E of I form.  Because Unum included "knowledge and belief" in its E of I form, the Court finds that the responses must not only have been incorrect in fact but also made contrary to the deceased's knowledge and belief.  (R. at 130.)  Although Defendant argues that this language should not alter the terms of the policy, the Court notes that it would be inequitable to request an applicant to give information to the best of his knowledge and belief and then deny his claim if his belief turns out to be erroneous.  See <u>Hauser</u>, 56 F.3d at 1334 (declining to protect the insurer from the risk it assumed by virtue of the language it drafted).

In sum, in order for Plaintiff to prevail, she must prove that the Defendant acted arbitrarily and capriciously when it denied Yarbrough's claim.  To establish that Unum acted in such a manner, Yarbrough must only show that the answers, which were the basis of the denial, were made to the best of the decedent's knowledge and belief, whether or not they were in fact correct.

III.  <u>Whether Unum Should be Permitted to Base its Appellate Decision on Additional Information and Whether Unum Reviewed "New Information" Submitted by the Plaintiff.</u>

Yarbrough contends that the Defendant acted arbitrarily when it based its decision on appeal

12

on reasons not included in the initial denial letter and by failing to take into consideration her view of the issues. The Court will consider each of these assertions.

### A. Other Information Considered on Appeal.

Plaintiff maintains that Defendant's use of additional reasons not contained in its initial denial allows for the circumvention of the appeals process and limits Plaintiff's ability to produce evidence necessary to refute the allegations contained in the final denial letter. (Pl.'s Mem. at 14.) However, Yarbrough has cited to no legal authority for the proposition that relying on additional evidence on appeal is either arbitrary or capricious or in violation of her right to a full and fair review. Defendant insists that it did not provide new reasons but simply additional support for its initial conclusion—that the decedent failed to disclose all of his medical conditions and prescriptions on the E of I form. (Def.'s Mem. at 19.)

ERISA provides that every employee benefit plan shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial" and shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary." 29 U.S.C. § 1133(1), (2). One of the regulations promulgated under § 1133 states that

> the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits . . . [and] [p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503-1(h). Only substantial compliance with § 1133 and its regulations is required. See Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 690 (7th Cir. 1992).

In Kraut v. Wisconsin Laborers Health Fund, 992 F.2d 113, 117-18 (7th Cir. 1993), the plaintiffs argued that they had been denied their right to a full and fair review under § 1133 when the plan administrator articulated two reasons for the denial in the initial denial letter but added a third reason in the final denial letter after the appeals process was completed. The Seventh Circuit held that "nothing in ERISA § 503, 29 U.S.C. § 1133 explicitly precludes the Trustees from citing an exclusion not mentioned in an original letter of denial. Rather, that section requires 'specific reasons for denial of a claim' and 'full and fair review' by a named fiduciary." Id. (citing 29 C.F.R. § 2560.503-1(f)(1) and (h)(2)). In finding no § 1133 violation, the court concluded that the plaintiffs "[had] been provided with specific reasons for the denial of their claim and [had] not been denied full and fair review of their case." Id. Likewise, in Tormey v. General American Life Insurance Company, 973 F. Supp. 805, 814 (N.D. Ill. 1997), the court allowed the plan administrator on appeal to rely on additional evidence to support the denial of the plaintiff's claim. The plan administrator's first denial letter in Tormey failed to comply with § 1133 by not providing specific reasons for its decision. Id. However, "[a]s part of the reviewing process, an agent of [the plan administrator] gathered additional medical records" and forwarded the information to the defendant, which upheld the decision denying coverage, explaining in detail why the plaintiff's claim was not covered. Id. The court determined that "even though [the plan administrator] violated the procedural requirements of § 1133, it substantially complied with the regulations because it ultimately provided [the plaintiff] with a full and fair review of his claim." Id.

14

Plaintiff's argument that Unum should not be allowed to rely on additional evidence to support its conclusion is without support. This same argument was rejected in <u>Kraut</u> which found that nothing in § 1133 precludes a plan administrator from relying on additional reasons not cited in the original letter of denial. <u>See</u> <u>Kraut</u>, 992 F.2d at 118. Moreover, since Unum must only substantially comply with the statute, Plaintiff's argument that the Defendant failed to provide it a full and fair opportunity for review is unpersuasive. <u>See</u> <u>Halpin</u>, 962 F.2d at 690. Thus, this Court concludes that Unum's reliance on additional reasons in its final letter to Plaintiff was not in violation of § 1133. <u>See</u> <u>Tormey</u>, 973 F. Supp. at 814.

### B. Unum's Consideration on Appeal of Plaintiff's "New" Information.

Yarbrough also maintains that the Defendant failed to comply with the policy which required it to "make a full and fair review of the claim and all new information submitted" when Unum sent Plaintiff's letter containing her view of the issues to the appeals department instead of reviewing it as new information and forwarding the letter to the initial review department. (Pl.'s Mem. at 12; R. at 71.) In support of her argument, Plaintiff points to the record which contained a form completed by an employee of Unum indicating that no new information was provided in the Plaintiff's appeal letter. (R. at 275.) In the letter, as Plaintiff notes, only her view of the issues was included. (R. at 276; Pl.'s Mem. at 13 n.6.)

In response, Defendant maintains that Plaintiff's subjective opinions were not new information warranting additional medical and underwriting file review. (Def.'s Mem. at 19.) Additionally, Unum submits that Yarbrough's claims that a full file review did not take place and that her letter was not addressed were belied by the fact that it offered additional reasons for its final denial. (Def.'s Mem. at 19 n.14.)

15

The Court concludes that Plaintiff's assertion that the Defendant failed to review her letter is without merit. Yarbrough's letter included no new information that was not already a part of the record and reflected only her personal view of the evidence. (R. at 276.) In its discretionary authority, the Defendant may interpret the terms of the policy and construe the terms "new information" as including only new factual information. See Williams, 227 F.3d at 712. Accordingly, it was not arbitrary or capricious for Unum to determine that no additional information was contained in her letter.

IV.  Unum's Denial of Plaintiff's Claim for Supplemental Life Insurance.

Defendant denied Yarbrough's claim for additional life insurance coverage applied for by the deceased on January 3, 2002. According to Unum, the decedent did not accurately complete the E of I in listing all of his medical conditions as well as the prescriptions and treatments administered to treat those conditions. As stated previously, the Defendant initially denied Plaintiff's claim after an investigation of the deceased's medical records revealed that he failed to disclose his accurate weight, high blood pressure problems, and an elevated liver enzymes test which lead to his treatment with a "step 1" diet. (Def.'s Mem. at 9-10.) After the Plaintiff appealed the decision, Unum, upon further investigation, discovered that the medical records also revealed that on May 18, 2000 the decedent's doctor diagnosed him as "obese," with atypical pneumonia, and with gastroesophageal reflux disease, all of which required prescription medication. (R. at 178.) Decedent's medical record of September 20, 2001 also reflected that the deceased had "a history of asthma" and that he had been out of prescriptions of "Azmacort and Ventilin for about a month." (R. at 182; Def.'s Mem. at 9-10.)

Based on these new discoveries, Unum concluded that the decedent had failed to accurately

16

answer four of the questions on the E of I form, as set forth in detail earlier in this order.  As a result

of these incomplete responses, Unum denied Plaintiff's claim for additional life insurance coverage.

In response, Yarbrough disputes that the decedent answered incorrectly or incompletely.

With respect to the weight discrepancy, she argues that his weight fluctuated in the various office

visits from October 19, 1999 through May 14, 2002 where the reports were from 290 to 300 pounds.

Further, she insists that there is no evidence in the record which reflects that the decedent's weight

was not 260 pounds on January 2, 2002 when he completed the E of I form.  (Pl.'s Mem. at 18; Pl.'s

Reply at 5.)  Plaintiff submits that the E of I questions did not ask what the employee's weight was

on the dates he visited the doctor.  (Pl.'s Mem. at 11.)  Nor did the E of I form seek information on

liver enzymes or blood pressure readings.  (Pl.'s Mem. at 11.)  As for the decedent's blood pressure,

Plaintiff contends that he did not fail to answer question one which asked if he had ever been

"diagnosed or received treatment" for high blood pressure because an elevated reading does not

alone lead to the conclusion that he was diagnosed or treated for that condition.  (Pl.'s Mem. at 20.)

Likewise, as to the deceased's elevated liver enzymes, Yarbrough maintains that this does not mean

that he had been "diagnosed or received treatment . . . for . . . liver disease."  She also stresses that

the medical records do not indicate that the decedent had liver disease.  (Pl.'s Mem. at 20.)

As to the notations of deceased's obesity, treatment with the "sugar busters diet," and

medication, Plaintiff claims that "[t]here is no question on the form that asks about obesity."  (Pl.'s

Mem. at 19.)  With respect to the deceased's history of asthma and atypical pneumonia, Yarbrough

contends that such findings do not mean that he had been diagnosed with a respiratory condition.

(Pl.'s Mem. at 21.)  She concedes that the medical records reflect a history of asthma for which the

decedent received treatment on September 20, 2001.  (Pl.'s Reply at 7.)  Nonetheless, Plaintiff

17

submits that the question was poorly worded and that her husband, who only had a high school education, was not trained in medical terminology. (Pl.'s Mem. at 21; Pl.'s Reply at 7.) Finally, Plaintiff contends that there was no evidence in the record that the deceased was taking reflux medication on January 3, 2002. (Pl.'s Mem. at 22.) With these explanations, she submits that Unum's denial, based on an inaccurate completion of the E of I form, was arbitrary and capricious.

The Court finds that the insured's responses on the E of I form were not made to the best of his knowledge and belief. As for question one regarding a respiratory condition within the past seven years, the deceased failed to report a history of asthma for which he received treatment only four months before he completed the form. (See R. at 130, 182.) Similarly, as to question five, which asked whether he had been consulted or treated during the past five years for other conditions not listed in response to question one, he failed to list atypical pneumonia and gastroesophageal reflux disease on May 18, 2000.[1] (R. at 178-79.)

The Court further determines that in response to question five, the decedent should have disclosed that he received recommended dietary treatment for his elevated liver enzymes. (R. at 130.) Although the deceased was only required to provide the information to the best of his knowledge and belief, he should have known that the results of this test would qualify as a "condition" for which he was consulted or treated by a doctor within the past five years. (See R. at 130.) Although the deceased may not have had medical training, he had completed high school and obviously was able to read and write. (R. at 302.) Likewise, the deceased should have listed that he was treated for obesity when he was put on a "sugar busters diet." (R. at 178.) Accordingly, the

---

[1] The Court would note that the deceased, in responding to these questions, would not have been required to list former medications but only those that were currently being taken.

18

Court finds that Defendant's conclusions regarding decedent's answers to questions one and five were not arbitrary or capricious in light of the information discovered in the deceased's medical records.

Plaintiff argues that even if the decedent made misrepresentations, they were not material in the Defendant's decision to issue the coverage. In <u>Davies</u>, the Sixth Circuit stated that a misstatement is material if it "materially affects the insurer's risk or the hazard assumed by the insurer." <u>Davies</u>, 128 F.3d at 943. Unum submits that had the decedent disclosed the prior medical diagnoses of asthma, gastroesophageal reflux disease, liver enzymes, and obesity, it would not have approved his application for additional insurance coverage. (<u>See</u> Def.'s Mem. at 10; R. at 265.) The Court finds that the omissions by the deceased were material because such medical conditions would clearly affect the risk assumed by an insurer in issuing a life insurance policy for someone who is in a different state of health than what was portrayed in the application for coverage. <u>See Brasure v. Optimum Choice Ins. Co.</u>, 37 F. Supp. 2d 340, 346 (D. Del. 1999) (concluding that plaintiff's failure to disclose part of his medical history on a risk assessment form was material as a matter of law).

The Court finds that Unum's decision to deny Plaintiff's claim for the proceeds under the deceased's supplemental life insurance coverage was not arbitrary and capricious. Even considering the conflict of interest as a factor in Unum's decision, it was still rational. "We simply ask whether it is possible for [the plan administrator] to offer a reasoned explanation for its denial." <u>Raskin</u>, No. 03-2270, 2005 WL 271939, at *4. Moreover, when considering that the policy gave the Defendant discretionary authority to determine whether Plaintiff's claim for benefits was within the coverage of the policy, the Court is not persuaded that the weight of the evidence is contrary to Defendant's determination.

19

Plaintiff makes much of the fact that the Defendant only relied on the deceased's medical records without consulting the deceased's physician personally.  (Pl.'s Mem. at 22.)  However, nothing in the policy requires Unum to consult the decedent's physician before denying the Plaintiff's claim.  See Jackson v. Metro. Life, No. 01-5028, 2001 WL 1450811, at *3 (6th Cir. Oct. 29, 2001) (stating that the plan administrator need not conduct an independent medical examination of the plaintiff regarding her condition); see also Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 335 n.9 (5th Cir. 2001) (stating that the plan did not require the claimants to be examined prior to denial) (citing Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 215 (5th Cir. 1999)).  Accordingly, Defendant did not act arbitrarily or capriciously in denying the Plaintiff's claim.

CONCLUSION

For the reasons articulated herein, Defendant's motion to deny relief and to affirm Unum's decision to deny benefits is GRANTED.  Thus, Plaintiff's motion to reverse Defendant's denial of death benefits is DENIED.

IT IS SO ORDERED this 21 day of April, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

20

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 41 in case 2:03-CV-02630 was distributed by fax, mail, or direct printing on April 25, 2005 to the parties listed.

---

William B. Walk
SPENCE LAW FIRM, PLLC
119 S. Main St.
Ste. 500
Memphis, TN 38103

R. Scott Vincent
LEITNER WILLIAMS DOOLEY & NAPOLITAN-Memphis
254 Court Ave.
Second Floor
Memphis, TN 38103

Robert L.J. Spence
SPENCE LAW FIRM, PLLC
119 S. Main St.
Ste. 500
Memphis, TN 38103

S. Russell Headrick
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT